PRYOR CASHMAN LLP

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806

pryorcashman.com

February 15, 2023

**VIA ECF**

Hon. Louis L. Stanton
District Judge, United States District Court
Southern District of New York
500 Pearl St, New York, New York 10007-1312

   Re: *METAx LLC v. Meta Platforms, Inc.*, **Case No. 1:22-cv-06125-LSS — Pre-Motion Discovery Conference**

Dear Judge Stanton,

  We represent Plaintiff METAx LLC ("Meta") in the above-referenced action. In accordance with Your Honor's Individual Civil Rule 2(A) and Local Civil Rule 37.2, we request a pre-motion discovery conference to identify the bases upon which Meta intends to move to compel discovery.

  The parties have spent nearly four months engaging in meet and confers and exchanging correspondence to resolve disputed discovery issues.[1] Defendant Meta Platforms, Inc. ("Facebook") has taken unreasonable positions on certain issues, only to drop them after months of meetings and correspondence. Facebook has also made incremental movements or immaterial compromises to produce documents, after dwelling on the same for weeks. In many cases, Facebook's responses have failed to address issues promised to be addressed, and have been deficient and confusing, leaving Meta unable to discern the nature of Facebook's agreements or positions and forcing the parties to engage in additional meetings and correspondence. Just two days ago, Facebook served 38 further requests on Meta which are inconsistent with many positions Facebook has maintained for months regarding the requests Meta served on Facebook. Facebook's inappropriate conduct in discovery is not isolated to this case.[2]

  Meta has made numerous good-faith compromises to amicably resolve the outstanding issues and avoid burdening the Court. However, as addressed herein, there remain several critical issues in dispute. The parties are at an impasse on the issues set forth below.

  **I.** **Facebook's Responses to Meta's RFPs**

  **RFPs 5 and 6**: RFP 5 calls for "documents and communications concerning Defendant's acquisition, Defendant's purchase, assignment to Defendant, or other transfer to Defendant, of trademark applications and registrations of META-formative marks." *See* Ex. A at p. 9. Facebook agreed only to produce documents sufficient to show "rights MPI acquired in connection with" seven

---

[1] The parties have engaged in four meet and confers totaling nearly seven hours, and have exchanged 13 substantive pieces of discovery correspondence. *See* Exs. E through L and O through S annexed hereto.

[2] *See, e.g.*, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-MD-02843-VC, 2023 WL 1871107, at *1 (N.D. Cal. Feb. 9, 2023) (holding, *inter alia*, that Facebook and its "high-powered law firm" used "delay, misdirection, and frivolous arguments to make litigation unfairly difficult and expensive for their opponents" and then "had the audacity to accuse the plaintiffs' lawyers of delaying the case, and to assert that the plaintiffs' reasonable efforts to obtain obviously relevant discovery were frivolous.").

META-formative marks.  Not only is the meaning of "rights MPI acquired" amorphous, but Facebook has outright refused to produce documents related to its "purchase, assignment, or other transfer of trademark applications and registrations of meta-formative marks."  *See* Ex. M at p. 9-10.

RFP 6 calls for "documents and communications concerning Defendant's purchase or acquisition of any: (i) names and trade names associated with Meta Financial…; (ii) trademark registrations and common law rights associated with Meta Financial; (iii) domain names and social media accounts associated with Meta Financial; and (iv) goodwill associated with Meta Financial."  *See* Ex. A at p. 9.  Facebook has flatly refused to produce documents responsive to RFP 6.  *See* Ex. C at p. 10-11.

The information requested by RFPs 5 and 6 is highly relevant to Meta's claims — particularly, the assessment of monetary relief under the Lanham Act.  *See* Ex. Q at p. 2; Ex. O at p. 11-13.  Meta has asserted a reverse confusion claim.  In reverse confusion cases, courts have accepted the use of a reasonable royalty rate to determine actual damages (considering the infringer's profits and plaintiff's lost profits) — ascertaining the value of a hypothetical licensing agreement between the parties using such a reasonable royalty rate.  *See, e.g., Gucci Am, Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250 (S.D.N.Y. 2012); *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1343 (7th Cir. 1994).  As part of that analysis, courts frequently "compare [the] proposed rate with other royalty rates for trademark licenses" paid by the infringing party.  *Id.* at 1343.  Moreover, courts require reasonable royalty calculations to be "sufficiently reliable" by experts considering a comprehensive body of evidence, and compel defendants to provide such information for an expert to reliably opine.  *See, e.g., Gucci,* 858 F. Supp. 2d at 254.  Depriving Meta of such information will improperly prevent its expert(s) from reliably making reasonable royalty calculations. Thus, the information sought by RFPs 5 and 6 is highly relevant and critical to enable expert(s) to properly undertake their work, and to enable the jury to determine monetary relief to which Meta is entitled.

**RFP 14**: RFP 14 calls for "documents and communications concerning Defendant's … targeting of, attempts or plans to engage, engagement with, and work with, creators or influencers associated with the Industry," including certain named creators.  *See* Ex. A at p. 10.  Facebook narrowly agreed to produce "documents sufficient to show" the vague and indeterminate "terms of MPI's relationship" with only the named creators.  Facebook only agreed to produce documents sufficient to show the "identities" of other creators).  Facebook flatly refused to produce "communications."  *See* Ex. M at p. 18-19.  Facebook attempts to justify its deficient response by summarily claiming that searching for Meta's requested documents would pose an "undue burden." *Id.*

The information requested by RFP 14 is highly relevant to Meta's claims — particularly, that the parties' share identical consumers and offer identical goods and services — because creators are *consumers* of the parties' goods and services.  Facebook's "undue burden" objection is illogical, given that Facebook identified only four individuals (in response to ROG 5) who likely have information responsive to RFP 14.  Further, Facebook failed to provide *any* reasoning to support its argument that producing documents regarding unnamed creators would be unduly burdensome.

II.     **Facebook's Responses to Meta's Interrogatories**



**Confidentiality Designations**: Facebook has improperly designated names of its employees as confidential in responding to Meta's Interrogatories 1, 2, 3, 5 and 6. These Interrogatories generally seek the identity of: persons involved in the creation and selection of the META Mark; persons involved in the acquisition/purchase/assignment/transfer of trademark applications and registration to Facebook concerning META-formative marks; persons involved in marketing, provision and sale of Facebook's goods and services within the Industry; persons involved in Facebook's targeting/engagement with creators and influencers associated with the Industry; and persons with knowledge of Plaintiff. Facebook claims it does not publicize information concerning its employees and their work within the company and that providing this type of information in one place somehow poses a risk to the company or such employees. Facebook's assertion is not only puzzling and legally unsupported, but rendered baseless by public sources, including articles and LinkedIn profiles, which clearly state *both* the names of some individuals marked as confidential, *as well as* the work they perform within the company. *See* Ex. E at p. 7-8. Further, some names marked as confidential in Facebook's Interrogatory Responses are *not marked* as confidential in Facebook's own Initial Disclosures.

**Interrogatory 6**: Interrogatory 6 calls for "persons with knowledge of Plaintiff and its business, including but not limited to Plaintiff's goods and services and Plaintiff's Mark." *See* Ex. B at p. 5. Facebook only identified individuals from its legal team and refused to identify additional persons despite the fact that the Complaint references senior Facebook employees who corresponded with Meta about its products and services in 2017. *See* Ex. N at p. 13-14. Facebook claims that any further identification would be overly burdensome, despite Facebook conceding it has failed to inquire whether the employees identified in the Complaint spoke with anyone else at Facebook about Meta's business and failed to inquire whether personnel within its Reality Labs business unit have knowledge responsive to Interrogatory 6. As Facebook is well aware, Meta has asserted a willful infringement claim and identifying individuals with knowledge responsive to ROG 6 is critical to Meta's claim of willfulness. Facebook's refusal to conduct any diligence that would enable it to sufficiently respond to Interrogatory 6 is therefore improper.

In light of the foregoing discovery disputes — which remain outstanding despite the parties' extensive discussions in four meet and confers and a protracted and lengthy letter writing exchange — Meta seeks to file a motion to compel discovery to obtain the information to which it is entitled.

Respectfully submitted,

Kaveri Arora

**CC:** All counsel of record (via ECF)

**Enclosures:**

- Exhibit A – 2022.10.13 Meta's First Set of RFPs
- Ex. B – 2022.10.13 Meta's First Set of ROGs
- Ex. C – 2022.11.18 Facebook's Initial Responses & Objections to Meta's First RFPs

**PRYOR CASHMAN LLP**

- [Redacted] Ex. D – 2022.11.18 Facebook's Initial Responses & Objections to Meta's First ROGs
- Ex. E – 2022.11.28 Meta Letter to Facebook regarding Discovery Deficiencies
- Ex. F – 2022.12.06 Facebook Letter to Meta re Nov. 28 Deficiency Letter
- Ex. G – 2022.12.08 Meta Letter to Facebook regarding Discovery Disputes
- Ex. H – 2022.12.13 Meta Letter to Facebook regarding Outstanding Discovery Disputes
- Ex. I – 2022.12.16 Facebook Email to Meta regarding Dec. 14 Meet & Confer
- [Redacted] Ex. J – 2022.12.21 Meta Letter to Facebook regarding Discovery
- [Redacted] Ex. K – 2022.12.23 Meta Email to Facebook regarding Discovery Disputes
- Ex. L – 2023.01.03 Facebook Email to Meta regarding Supplemental Discovery
- Ex. M – 2023.01.03 Facebook's Supplemental Responses to Meta's First RFPs
- [Redacted] Ex. N – 2023.01.03 Facebook's Supplemental Responses to Meta's First ROGs
- [Redacted] Ex. O – 2023.01.15 Meta Letter to Facebook regarding Outstanding Discovery Disputes and Facebook's Supplemental Discovery
- Ex. P – 2023.01.19 Facebook Email to Meta regarding Discovery Disputes
- Ex. Q – 2023.01.25 Meta Letter to Facebook regarding Impasse on Outstanding Discovery Disputes
- Ex. R – 2023.01.30 Facebook Email to Meta regarding Discovery Responses
- Ex. S – 2023.02.07 Facebook Email to Meta regarding Feb. 1 Meet & Confer