**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| METAx LLC, | Case No. 1: 22-cv-06125-LSS |
| Plaintiff, | |
| | **STIPULATED ORDER RE:** |
| - against - | **DISCOVERY OF ELECTRONICALLY** |
| | **STORED INFORMATION** |
| META PLATFORMS, INC., | |
| Defendant. | |

1.   **PURPOSE**

This Order will govern the preservation and discovery of electronically stored information ("ESI" or "eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

2.   **COOPERATION AND PROPORTIONALITY**

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter to promote the "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.  The parties' cooperation includes propounding reasonably particular discovery requests, identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable ESI, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues.  The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Rule 26(b)(1) of the Federal Rules of Civil Procedure.

3.   **LIAISON**

Each party shall designate and make available an individual or individuals as eDiscovery Liaison(s) who must:

(a)   be prepared to meet and confer on eDiscovery-related matters;

(b)   be knowledgeable about the party's eDiscovery efforts; and

(c)     be, or have reasonable access to those who are, knowledgeable about the technical aspects of eDiscovery, including the storage, location, nature, accessibility, format, collection, and production of ESI in this matter.

4.     **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a)     Parties will preserve non-duplicative, relevant information currently in their possession, custody, or control; however, parties are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data.  This Section 4(a) is not intended to supersede or supplant any of the parties' reasonable and proportionate preservation obligations, including under their respective litigation holds with respect to this Action.

(b)     Subject to and without waiving any protection described in Section 4(a) above, the parties agree that:

    1.     Only ESI created or received on or after January 1, 2016 will be preserved;

    2.     The parties have discussed the sources and types of relevant ESI they believe should be preserved;

    3.     The parties will agree on the number of custodians per party for whom ESI will be preserved. The parties agree to meet & confer to discuss additional custodians as reasonably necessary (including without limitation, when specific evidence warrants expanding the initial custodian list).

(c)     ESI in the data sources listed in the two immediately following bullets will be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party:

    1.     backup systems and/or tapes used for disaster recovery; and

2.     systems no longer in use that cannot be accessed by using systems currently in use by the party, provided, however that if any party identifies a system removed from use after January 1, 2016 as containing relevant, discoverable and non-duplicative information, the parties will meet and confer concerning the proportionality and burden of accessing such information.

(d)     ESI in the data sources listed in the five immediately following bullets will be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced, unless ordered by the Court upon a motion of a party.  To the extent, however, that a party identifies discoverable information contained in the following sources in custodial or non-custodial files, the Parties will preserve, collect, process, review, and/or produce non-privileged, responsive material from such sources.  The parties recognize their obligation to ask each custodian whether they have responsive information in the following sources:

1.     Voicemails or voice messages;

2.     Text, chat, or instant messages that are not chronicled to an email archive system;

3.     Sound recordings, including, without limitation, .mp3/.mp4 and .wav files

4.     Video recordings; and

5.     Information solely contained on mobile devices.

(e)     In addition to the agreements above, the parties agree data from the sources listed in the following bullets (a) could contain relevant information but (b) under the proportionality factors, should not be preserved:

1.     Deleted, slack, fragmented, or unallocated data only accessible by forensics.

2.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.     Internet browser temporary internet files, history, cache, cookies, and the like.

4.      Data in metadata fields, in for example word processing, spreadsheet or presentation software files, that are frequently updated automatically, such as last-opened or last modified dates.

5.      Mobile device activity logs.

6.      Server, system, or network logs.

7.      Dynamic fields in databases or log files not stored or retained in the usual course of business.

8.      Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party.

(f)     The Parties acknowledge that Meta Platforms, Inc. is subject to various privacy regulations and court orders that require the disposition of identifiable user data.  To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified as relevant to the claims or defenses in this case, Defendant will notify Plaintiff within a reasonable amount of time and describe the data at issue, and the parties will meet and confer on preservation of such information as it exists at that time, including the feasibility of such preservation and the type and import of the user data implicated.

5.      **SEARCH**

The Parties agree that each producing party is best situated to determine the most appropriate method or methods for that producing party to search, collect, cull, and produce documents responsive to discovery.  The parties agree that in responding to an initial request under Rule 34 of the Federal Rules of Civil Procedure, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production.

(a)     Search Terms Methodology:  Each producing party will develop its own narrowly tailored search terms to locate its relevant documents that are responsive to discovery for collection and/or culling after collection. After applying its search

terms to the identified custodians' document set(s), that producing party will produce to the requesting party the relevant, responsive, non-privileged documents and, if requested by the requesting party, a list of positive results, or "hits," for each of the search terms across all searched custodians.  If the requesting party objects to the sufficiency of the producing party's search terms during the course of discovery, including because such search term returned a low yield, the parties agree to meet and confer to discuss potential new or additional search terms to capture any additional responsive materials.  If any search terms developed by either party have an unreasonably high or overbroad yield, the producing party shall provide a "hit" list reflecting such unreasonably high yield(s) and the parties shall meet and confer on revised search terms to limit or narrow the overbreadth of the proposed search terms.  Should the parties not reach agreement on search terms, the requesting party may seek intervention from the Court to address the issue.

(b)     Technology Assisted Review.  A party may use technology assisted review (TAR) or similar advanced analytics to filter out or exclude non-responsive documents.[1] If a producing party chooses to use TAR or similar advanced analytics to filter out or exclude documents from review, the producing party must disclose which advanced analytics it will use.   A receiving party may request the following information about a producing party's use of TAR or similar advanced analytics limited to the following: (1) the custodians and data sources against which TAR or advanced analytics will be run; (2) the TAR or advanced analytics tool being used and vendor; and (3) the measure(s) used to validate the results of the TAR methodology or similar advanced analytics.

(c)     Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured

---

[1] A producing Party need not disclose whether it is using TAR, Continuous Active Learning (CAL), or any other predictive coding to prioritize the review of documents collected.

by search terms are in fact relevant to the requesting party's discovery requests. Similarly, nothing in this Order may be construed or interpreted as precluding a producing party from performing, by any means, a privilege review of documents determined to be relevant.  Nothing in this Order may be construed or interpreted as precluding a receiving party from challenging the sufficiency of a producing party's search terms, search methodology, or review methodology.  Further, nothing in this Order requires the production of documents that are irrelevant, privileged, or otherwise protected from disclosure merely because the documents hit upon a search term.

(d)     Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. For example, Hash values may be filtered out during this process using the National Software Reference Library ("NSRL") NIST hash set list.

(e)     <u>De-Duplication</u>.  Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (e.g., based on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, or would result in non-production of responsive ESI, the parties shall not de-duplicate such files.

(f)     <u>Email Threading</u>.  Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Notwithstanding the foregoing, to the extent a particular email "thread" splits, causing separate email

chains, a party must produce all such email chains to ensure all communications and attachments are produced.

(g) On-site inspection will not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

6. **PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

7. **PHASING**

When a party propounds discovery requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, the parties agree to phase the production of ESI. Following the initial production, the parties will meet and confer regarding the prioritization of the order of subsequent productions. The producing party will consider, in good faith, requests for prioritization.

8. **DOCUMENTS PROTECTED FROM DISCOVERY**

(a) The parties will submit to the Court a separate Order under Rule 502(d) of the Federal Rules of Evidence and a Protective Order that govern the production of documents protected from discovery.

(b) The parties will submit a separate Stipulated Protective Order that governs the production of documents protected from discovery.

(c) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Rules 26(b)(3)(A) and (B) of the Federal Rules of Civil Procedure.

(d) Privilege and Redaction Log Formatting and Timing.

1. For email threads in which the entirety of the thread is being withheld on the basis of an asserted privilege, the parties agree to log only the Last In

Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email.

2.  Each member of a family (i.e., email attaching a document) that is withheld or redacted on the basis of privilege, attorney work product, or similar doctrines shall be identified on the log separately.

3.  Any privileged written and oral communications dated on or after June 15, 2022 regarding this Action between a party and its outside counsel in connection with this Action, and work product material prepared in connection with this Action by or at the direction of the party's outside counsel in this Action are not required to be identified on a privilege and/or redaction log.

4.  The privilege log and/or redaction log will be produced in an Excel spreadsheet format.

5.  The parties agree to furnish logs that comply with Rule 26(b)(5) of the Federal Rules of Civil Procedure and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege and/or redaction logs shall be produced in good faith on a rolling basis and no later than 45 days after each document production is complete (to allow for time to resolve any disputes).

6.  Within 30 business days of receiving a privilege or redaction log or learning of additional facts regarding logged documents or materials and/or their privileged status, a receiving party may identify particular documents or redacted information that it asserts are not privileged or that require further explanation.  The receiving party shall explain in writing its basis for asserting that such documents or information are not privileged or the need for additional information and state precisely each document (by Bates

number or privilege log entry) for which it disputes the privilege designation or seeks additional information.  Within 14 days of such a request, or within a reasonable time depending on volume, the producing party must (i) inform the receiving party which documents listed on the privilege log or redaction log (if any) the producing party will produce and (ii) provide any additional information (if any) that the producing party is willing to provide. If the receiving party still asserts that there are documents or information that were improperly designated as privileged, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court.

(e)     Nothing in this Order requires disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

9.      **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

Dated: June 9, 2023

                                         KIRKLAND & ELLIS LLP

                                         _____
                                         Dale M. Cendali
                                         Claudia Ray
                                         601 Lexington Avenue
                                         New York, New York 10022
                                         Telephone: (212) 446-4800
                                         Fax: (212) 446-4948
                                         dale.cendali@kirkland.com
                                         claudia.ray@kirkland.com

Allison W. Buchner (admitted *pro hac vice*)
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4302
allison.buchner@kirkland.com
Lauren Schweitzer (admitted *pro hac vice*)
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
lauren.schweitzer@kirkland.com

*Attorneys for Defendant Meta Platforms, Inc.*

Dated: June 9, 2023

PRYOR CASHMAN LLP

_____

Dyan Finguerra-DuCharme
Robert J. deBrauwere
Kaveri B. Arora
Nicholas Saady
7 Times Square
New York, New York 10036
Tel. (212) 421-4100
Fax. (212) 326-0806
dfinguerra-ducharme@pryorcashman.com

*Attorneys for Plaintiff METAx LLC*

**IT IS SO ORDERED**.

Dated: _____, 2023

_____

HON. LOUIS L. STANTON

United States District Judge

**APPENDIX 1: PRODUCTION FORMAT**

1.  **Production Components.**  Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

    (a)   an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

    (b)   an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity);

    (c)   TIFF images;

    (d)   and document level .TXT files for all documents containing extracted full text or OCR text;

    (e)   Parent-child relationships will be maintained in production. Links within a document are not considered attachments.

    If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2.  **Production Media and Access Controls.**  Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on flash drive or external hard drive ("Production Media").  Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001").  Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the producing party's name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media.

    Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data

protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3.      **Data Load Files/Image Load Files.**  Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.  The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file.  Load files shall not vary in format or structure within a production, or from one production to another.

4.      **Metadata Fields.**  Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the party or the party's vendor.  The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |

| Field Name | Field Description |
|---|---|
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FILENAME | Filename of an electronic document |
| FILEPATH | Original path to the individual source file. Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) |

| Field Name | Field Description |
|---|---|
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTIONS | Indicate Yes/No if document redacted |

5. **TIFFs.**  Documents that exist only in hard copy format shall be scanned and produced as TIFFs.  Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below.  The parties shall take reasonable efforts to process presentations (*e.g.* MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. The parties shall also take reasonable efforts to process other files (e.g., MS Word, RTF, etc.) with all hidden content visible (e.g., track changes, comments, etc.). Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document.  Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

6. **Color.**  The parties may request color copies of a limited number of documents where color is necessary to accurately interpret the document.

7. **Text Files.**  A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename.  When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8. **Native Files.**  Spreadsheets (*e.g.* MS Excel) will be produced in native format unless redacted, in which instance, spreadsheets will be produced in TIFF with OCR Text Files or redacted using industry standard native redaction software.  To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above.  A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

9. **Confidentiality Designation.**  Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order to be entered in this matter.  Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

10. **Databases and Other Structured Data.**  The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information.  To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.  To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.