**ORIGINAL**

# KIRKLAND & ELLIS LLP

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/6/25

601 Lexington Avenue
New York, NY 10022
United States

Dale M. Cendali, P.C.
To Call Writer Directly:
+1 212 446 4846
dale.cendali@kirkland.com

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

**MEMO ENDORSED**

May 1, 2025

Hon. Louis L. Stanton
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> Both exhibits and the Commercially Sensitive Contract may be sealed.
> So Ordered.
> Louis L. Stanton
> 5/6/25

Re:   *METAx LLC v. Meta Platforms, Inc.*, No. 1:22-cv-6125-LLS – Response to April 24, 2025 Letter to Ms. Cendali (Dkt. 123)

Dear Judge Stanton:

We write in response to Your Honor's April 24, 2025 letter (Dkt. 123) where Your Honor, *inter alia*, invited Meta Platforms, Inc. ("MPI") to "submit additional documentation and explanation to justify" MPI's requested "sealing," as Your Honor indicated that the prior "submissions lack the specific factual analysis and narrow tailoring required under *Lugosch*." Dkt. 123 at 1. Accordingly, this letter (and attachments) provides additional justification, as requested by Your Honor, in support of MPI's ***further narrowly tailored*** sealing request.[1]

Despite any "qualified First Amendment right of access to certain judicial documents," a document "may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). Under *Lugosch*, courts employ "a

---

[1] In light of Your Honor's concern that MPI's requests were not sufficiently narrowly tailored, MPI has elected ***not*** to renew its efforts to seal the previously redacted portions of the following: (1) the March 13, 2025 transcript of the March 13, 2025 pre-motion discovery conference (Dkt. 103-1); (2) the Declaration of Scott Minden in Support of MPI's Opposition (Dkt. 111); (3) Plaintiff's Memorandum of Law in Support of Its Motion to Compel Documents Withheld by Defendant (Dkt. 102); (4) Exhibit 5 of Plaintiff's initial motion (Dkt. 103-5); (5) MPI's Memorandum of Law in Opposition to Plaintiff's Motion to Compel Documents Withheld by Defendant (Dkt. 110); and (6) Plaintiff's Reply Memorandum of Law in Further Support of Its Motion to Compel Documents Withheld by Defendant (Dkt. 116).

## KIRKLAND & ELLIS LLP

Hon. Louis L. Stanton
May 1, 2025
Page 2

three-step test for determining whether the presumption of public access is overcome," which includes: (1) "determin[ing] whether the documents are 'judicial documents' that are 'useful in the judicial process,'"[2]; (2) "if the documents are judicial documents, . . . determin[ing] the 'weight' of the presumption of public access"; and (3) balancing the "'competing considerations against [the presumption of access],' including 'privacy interests of those resisting disclosure.'" *CRC Ins. Servs., Inc. v. Suh*, 2025 WL 560749, at *1 (S.D.N.Y. Feb. 19, 2025) (quoting *Lugosch*, 435 F.3d at 119-20). The determination of whether the presumption in favor of public access is overcome is "made on a document-by-document basis." *Id.*

### I. SEALING OF EXHIBIT A TO THE DECLARATION OF SCOTT MINDEN (DKT. 111-1) IS PROPER UNDER *LUGOSCH* AND ITS PROGENY.

In its brief in opposition to Plaintiff's Motion to Compel, MPI referred to only two terms of the contract submitted as Exhibit A to the Declaration of Scott Minden (the "Competitively Sensitive Contract"): the provisions discussing confidentiality and indemnification obligations. *See* Dkts. 110 at 2, 15 (discussing confidentiality and indemnification provisions); 116 at 3 (discussing indemnity). Thus, MPI understands those to be the only terms of that contract that Your Honor may have relied upon in analyzing the motion to compel. As such, all other terms of that contract would be irrelevant to Your Honor's decision and therefore may properly be maintained under seal. *See, e.g., Moshell*, 2021 WL 3163600, at *1 (information the court does "not rely on" in resolving a dispute "are not 'judicial documents' to which the common law and First Amendment right of public access applies because they were not relevant to the Court's performance of a 'judicial function'" and may be properly maintained under seal).[3]

Accordingly, MPI's request to seal the ***irrelevant terms*** of the Competitively Sensitive Contract—terms the parties to the contract agreed were confidential and terms that the Court did

---

[2] It is unclear from the Court's order on the motion to compel (Dkt. 119) whether Your Honor relied upon either of the documents subject to this renewed sealing request. Accordingly, to the extent Your Honor did not rely on either of these documents in reaching Your Honor's decision on the motion to compel, then neither of these documents are "judicial documents" and they may be properly maintained under seal. *See Moshell v. Sasol Ltd.*, 2021 WL 3163600, at *1 (S.D.N.Y. July 24, 2021) (maintaining non-judicial documents under seal). And to the extent the documents were relied upon, sealing is justified for the additional reasons explained herein.

[3] MPI has attached to this response a redacted version of the Competitively Sensitive Contract.

## KIRKLAND & ELLIS LLP

Hon. Louis L. Stanton
May 1, 2025
Page 3

***not*** consider in its resolution of the motion to compel[4]—is narrowly tailored. *See, e.g., Rodriguez v. City of New York*, 2023 WL 2569889, at *2 (S.D.N.Y. Mar. 20, 2023) (finding "extraneous, irrelevant" information in a summary judgment submission may be sealed and collecting cases for same proposition).

Even if Your Honor relied on the entirety of the Competitively Sensitive Contract and not just the indemnity and confidentiality provisions, sealing is still warranted because MPI's interests (as well as those of its business partners who were also parties to the contract) outweigh the weight of any presumption of public access to the contract. The "weight" of any presumption of public access is determined by reference to "the role of the material at issue in the exercise of . . . judicial power and the resultant value of such information to those monitoring the federal courts." *CRC Ins. Servs., Inc.*, 2025 WL 560749, at *1. "Generally, the information will fall somewhere on a *continuum* from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (emphasis in original). Where material supporting resolution of a discovery motion is at issue, as here, courts find that those materials fall somewhere from "the middle of the 'continuum'" where the weight of the presumption is "modest," *id.* at *2, to the low end of the continuum where the "presumption in favor of public access is weak," *Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) (finding "presumption in favor of public access is weak" in connection with a "mere[] . . . motion to compel further discovery from a party").

Either way, MPI's and its third-party partners' countervailing interests far outweigh the "modest" or "weak" presumption of public access here. As highlighted in its original sealing motion, the Competitively Sensitive Contract "sets forth the competitively sensitive terms and obligations between MPI and its [third-party] partners," the disclosure of which "could provide valuable insight to MPI's" or the third parties' competitors that could be used by those competitors to unfairly compete with MPI or MPI's third-party partners. Dkt. 109 at 2. Given the risks of competitive harm to both MPI and its third-party partners, MPI expends significant resources keeping this type of highly sensitive information confidential.

Indeed, courts in this Circuit have routinely exercised their discretion to seal judicial records that, as here, would expose a litigant's and/or nonparty's confidential business information to the public. *See, e.g., CRC Ins. Servs., Inc.*, 2025 WL 560749, at *2 (granting motion to seal where the sealing request was "narrowly tailored to prevent unauthorized dissemination of

---

[4] Again, this would include (at a minimum) all provisions of the Competitively Sensitive Contract other than the indemnity and confidentiality provisions ***if those two provisions were considered by Your Honor in deciding the motion to compel***.

## KIRKLAND & ELLIS LLP

Hon. Louis L. Stanton
May 1, 2025
Page 4

confidential business information, and the protection of that information outweighs the public's [modest] right to access"); *Alexander Interactive, Inc.*, 2014 WL 4346174, at *2 (granting motion to seal where the sought-to-be sealed documents "contain[ed] confidential information [of a non-party] about its relationship with" the defendant); *see also* Dkt. 109 at 2 (collecting cases confirming that courts in this Circuit routinely find that confidential business information, like here, is the proper subject of sealing). Accordingly, the substantial interests of both MPI and its third-party partners in maintaining as confidential their competitively sensitive business information outweigh the, at best, modest presumption in favor of public access.

Finally, aside from the countervailing interests detailed above that justify sealing, the Competitively Sensitive Contract was also designated by MPI as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the parties' protective order. This confirms that both MPI's and its third-party partners' expectation is that the terms of its competitively sensitive agreement would remain confidential. *See* Dkt. 111-1. Thus, the parties' protective order reinforces the conclusion that the sealing of the Competitively Sensitive Agreement is proper. *See, e.g., Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 2019 WL 3753780, at *5 (E.D.N.Y. Aug. 8, 2019) (considering the party's designation of a contract as "Highly Confidential" in determining whether to seal said contract).

## II. THE SEALING OF EXHIBIT 3 (DKT. 103-3) IS PROPER UNDER *LUGOSCH* AND ITS PROGENY.

MPI next renews its request to seal Exhibit 3 (Dkt. 103-3), which reflects two confidential, internal documents of MPI. The first document describes information about MPI's confidential business strategies related to MPI's rebranding that could provide valuable insight into MPI's business practices, strategies and future plans that a competitor could exploit for its own gain. The second document reflects a confidential and internal discussion among MPI employees of the appropriate response to the improper disclosure of some of the company's confidential internal research. This document shows sensitive strategy information about how MPI intended to respond to the subject of a leak.

As with the Sensitive Commercial Contract, it is unclear from Your Honor's order on the motion to compel (Dkt. 119) whether Your Honor relied upon any portion of Exhibit 3 in reaching Your decision. Accordingly, to the extent that Your Honor did not rely upon Exhibit 3, then that document is ***not*** a judicial document to which the presumption of access applies, and it may be properly maintained under seal. *See, e.g., Moshell*, 2021 WL 3163600, at *1 (information the court does "not rely on" in resolving a dispute "are not 'judicial documents' to which the common law and First Amendment right of public access applies because they were not relevant to the Court's performance of a 'judicial function'" and may be properly maintained under seal).

## KIRKLAND & ELLIS LLP

Hon. Louis L. Stanton
May 1, 2025
Page 5

Assuming, however, that Your Honor relied on some portion of Exhibit 3, then the Court must determine the weight of the presumption of public access. Starting from the already "modest" or "weak" presumption of access that attaches to discovery motions and related materials, the presumption is further eroded with respect to Exhibit 3, as the "material is 'largely collateral to the factual and legal issues central to the resolution'" of Plaintiff's motion to compel. *DoorDash, Inc. v. City of New York*, 2024 WL 4285682, at *4 (S.D.N.Y. Sept. 24, 2024). Plaintiff cited Exhibit 3 in support of its statement that MPI downgraded to not privileged certain documents in the days leading up to the filing of Plaintiff's motion to compel. But the de-designation of the documents contained in Exhibit 3 does not speak to whether MPI met its burden of substantiating its privilege claims for the documents *actually* at issue in Plaintiff's motion. Accordingly, "the weight of the presumption of public access" to these internal communications "is low." *Id.*

Regardless, the countervailing interests of MPI in maintaining the confidentiality of its confidential business information outweigh any presumption of public access to Exhibit 3. The first document contained within Exhibit 3 reflects confidential information about MPI's business strategies related to MPI's rebranding that could provide valuable insight to competitors regarding MPI's business practices, strategies and future plans. The second document in Exhibit 3 reflects confidential, internal and preliminary discussions of how to respond to a leak of the company's confidential internal research, unrelated to this case.[5] "[C]ourts have consistently found that confidential commercial information of a business—including confidential research, internal business documents and information about a business's operations[—]are the proper subject of sealing." *Rodo Inc. v. Guimaraes*, 2022 WL 17742392, at *1 (S.D.N.Y. Dec. 5, 2022); *see also News Corp. v. CB Neptune Holdings, LLC*, 2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021) (recognizing courts "routinely seal documents to prevent the disclosure of confidential business information," including specifically "qualitative market research" and "non-public . . . research or technical information"); *PharmacyChecker.com LLC v. Nat'l Ass'n of Bds. of Pharm.*, 2022 WL 4956050, at *2 (S.D.N.Y. Aug. 26, 2022) ("[C]ourts have consistently found that confidential commercial information of a business—including confidential research, internal business documents and information about a business's operations are the proper subject of sealing.").

---

[5] In fact, the second document in Exhibit 3 is ***not responsive*** to any requests for production served in this matter nor does it contain any information about MPI's rebrand. The parties agreed to produce full document families—meaning the parent document and any child documents—if *any* document (parent or child) in that family was responsive. Here, the irrelevant second document in Exhibit 3 was pulled into MPI's document production by a responsive family member. But, again, the second document in Exhibit 3 is neither responsive itself to any requests for production nor does it contain any relevant information related to this case. Put differently, this document is wholly irrelevant to this case and confidential.

## KIRKLAND & ELLIS LLP

Hon. Louis L. Stanton
May 1, 2025
Page 6

What is more, the disclosure of confidential, internal and preliminary business-strategy discussions related to improperly disclosed internal research on the sensitive issues reflected in the second document in Exhibit 3 could harm MPI, if disclosed, given its commercial and competitive sensitivity. Similarly, the disclosure of confidential, internal business-strategy documents related to MPI's rebranding could harm MPI because it could provide insights into MPI's business practices, strategies, and future plans that a competitor could exploit. And, as noted in its original sealing motion, Dkt. 104 at 2, MPI ordinarily keeps its internal, proprietary business strategies and research and internal discussions about those subjects—like the two documents at issue here—confidential given this information's competitive sensitivity.

Accordingly, Exhibit 3 is properly sealed under *Lugosch* and its progeny.

\* \* \* \*

In conclusion, both Exhibit 3 and the irrelevant terms of the Commercially Sensitive Contract are properly sealed under *Lugosch*, as specific factual findings support sealing and both requests are narrowly tailored.

Sincerely,

*Dale M. Cendali*

Dale M. Cendali