

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806                                   pryorcashman.com

July 30, 2025

**VIA ECF**

The Honorable Louis L. Stanton
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007-1312

   Re: *METAx LLC v. Meta Platforms, Inc.*, 1:22-cv-06125-LLS

Dear Judge Stanton:

  In accordance with Your Honor's July 1, 2025 order (ECF No. 160, the "Order"), Plaintiff submits this letter summarizing the discovery issues in dispute.[1]

**I. PLAINTIFF'S PRE-MOTION LETTER (ECF No. 124) SHOULD BE GRANTED.**

  Plaintiff's letter moves on two issues: (a) Defendant's refusal to produce relevant financial documents in response to RFPs 68 and 69, and (b) Defendant's refusal to designate a corporate witness to testify about Topics ordered by the Court. Plaintiff's position on each is below.

  **A. Financial Documents and Testimony Sought Are Necessary for Calculate Profits.**

  RFPs 68 and 69 seek highly relevant financial information for specific goods and services offered by Defendant that are enumerated in RFP 68. Both Parties either offer the same or similar goods and services, and those not currently offered by Plaintiff are in the natural zone of expansion for Plaintiff (which are two key *Polaroid* factors). RFPs 68 and 69 seek financial information squarely about those goods and services.

  As more fully stated in Plaintiff's letter (ECF No. 124), RFP 68 targets only revenues received by Defendant from advertising services utilizing augmented reality, virtual reality and similar technologies (which are identical to services that Plaintiff provides) and revenues received by Defendant from creator subscription and verification services that it provides through its social media platforms (which are similar to services to be offered by Plaintiff and have been in Plaintiff's written business plans for years). Defendant is well aware of Plaintiff's advertising services, social media platform and intended subscription services because they are alleged in the Complaint and

---

[1] Plaintiff apologizes to the Court for the morning and separate filing. On July 10, 2025, Defendant informed Plaintiff that it would draft a joint letter for submission to Your Honor. **Defendant did not provide the draft to Plaintiff until 12:45am ET on the day it was due (yesterday, July 29).** While Defendant took 3 weeks to draft the letter, it demanded that Plaintiff turn around its edits in less than 5 business hours. After Plaintiff provided its revisions, which included conforming the letter to standard practice in the SDNY for joint letters, Defendant added 6 pages of content and sent the letter back to Plaintiff at 10:45pm ET, giving Plaintiff an hour to review 6 pages of content. Yet, Defendant brazenly notes on page 1 of its letter that Plaintiff had "plenty of time" to "make further revisions." Because Defendant's substantial revisions required close analytical review, it was not feasible to turn those around in an hour. While we regret that Defendant created a foreseeable and preventable situation, Plaintiff had no choice but to review the letter and revise its portions accordingly this morning.



The Honorable Louis L. Stanton
Page 2

detailed in documents produced to Defendant. Indeed, Defendant deposed Plaintiff's witnesses on documents that precisely set forth these services. Defendant cannot now pretend that the services do not overlap to avoid financial discovery. The only "fallacy" in this case is Defendant's remarkable ability to act like jurist rather than a party that is obligated to produce information in discovery so that the jury can decide whether the parties' goods and services are related.

Defendant asks the Court to believe its story that the information sought by RFPs 68 and 69 is not relevant because Plaintiff purportedly limited its entire case to the "Industry." Plaintiff did not. As Defendant knows, the parties **only** agreed to a definition of "Industry" for the purpose of **specific document requests.** Plaintiff did not limit any other document requests or discovery to the "Industry." Plaintiff's correspondence, to which Defendant did not object, unambiguously confirms that the "definition of Industry … **does not seek to limit any aspect of Plaintiff's case, nor any of the allegations in Plaintiff's Complaint. Nor does it limit any future discovery of any kind**." (ECF No. 135-4 at 5, n.4 (quoting the same in another letter sent by Plaintiff in December 2022).) Plaintiff's written representations are consistent with its Complaint, which pleads that Plaintiff offers an array of goods and services to its consumers well beyond a single industry. (*See* Compl. ¶¶ 28-30.) Plaintiff's written representations are also consistent with two years of discovery — as document requests, interrogatories, requests for admission and deposition testimony from both sides over the last two years have gone well beyond any single industry. Indeed, Defendant produced thousands of documents and testified about advertising goods and services as well as Facebook and Instagram. Defendant is now reversing course to avoid producing financials on those services. As such, Defendant's argument that this Action is limited to the "Industry" is frivolous and must be rejected.

Contrary to Defendant's assertions on page 2 of its letter, Plaintiff is not seeking financial information about Defendant's consumer headsets and other hardware/software products. Rather, Plaintiff seeks targeted revenue generated from (i) sales of VR/AR/XR advertisements, (ii) verification and subscription services offered to creators, an (iii) other limited categories stated in ECF No. 124. As above, the first category is precisely part of the "Industry," and the second category is clearly set forth in the Complaint and exhibits used by Defendant at depositions of Plaintiff's founders. The other categories are similarly supported by the record.

Defendant further misrepresents facts to the Court regarding Plaintiff's social media platform. That platform was operational in 2019, paused for further development during the pandemic, and its latest version will be released **tomorrow**. Had Defendant asked insightful questions during depositions of Plaintiff's founders, it would have learned this timeline. But, it did not, either because opposing counsel was not prepared and/or Defendant did not want testimony record made of the actual facts. In either event, page 3 of Defendant's letter mischaracterizes Plaintiff's services and ignores the fifth *Polaroid* factor — a plaintiff does not need to actually render the same services at the time it asserts an infringement claim because the assessment is whether the services provided by the defendant are within a natural zone of expansion for the plaintiff. Plaintiff is entitled to financial information concerning AR/VR/XR advertising services because Plaintiff is already providing such services, and Plaintiff is entitled to financial information about Defendant's subscription services because these are a natural zone of expansion for Plaintiff, **as shown by deposition exhibits made of record by opposing counsel**.

**PRYOR CASHMAN LLP**

The Honorable Louis L. Stanton
Page 3

      Defendant also argues that RFPs 68 and 69 are overbroad and seek "every internal financial statement or analysis." That is false. RFPs 68 and 69 are narrow and targeted. RFP 68 seeks only "documents sufficient to show." RFP 69 seeks specific documents. There is minimal, if any, burden, which is outweighed by the high relevance of the documents sought.

      Defendant is deliberately withholding these documents and associated testimony to prevent Plaintiff from calculating profits under the Lanham Act. Defendant's refusal to produce financial information about these services is a transparent attempt to limit its liability.

### B. Defendant's Refusal to Testify About Topics Ordered by the Court.

      On June 20, 2024, Your Honor directed Plaintiff to depose Defendant's senior executives and those involved in transactions to acquire META-formative marks on Defendant's behalf. (*See* ECF No. 124 at 3; June 20, 2024 Hearing Tr. at 9:23-25, 17:5) Specifically, Your Honor unambiguously directed Plaintiff to, *inter alia*, "**tak[e] the deposition** of the executives" and "talk[] to the people who acted" with respect to the transactions at issue. (*Id.*) In accordance with Your Honor's ruling, Plaintiff sought to depose Defendant on three 30(b)(6) Topics concerning such transactions: Topics 57, 59, and 60. Defendant refused to designate a witness on these Topics.

      To excuse its refusals to testify, Defendant argues that reasonable royalty damages are unavailable to Plaintiff and that the testimony sought by Plaintiff is not relevant to reasonable royalty damages. But Defendant may not (a) unilaterally determine, especially at this discovery stage, whether Plaintiff is entitled to reasonable royalty damages, nor (b) unilaterally decide what information is "relevant" to any such assessment. That is an issue properly before the Court at the expert discovery phase. In essence, Defendant is usurping Your Honor's role by unilaterally deciding that reasonable royalties are not appropriate. Plaintiff is entitled to discover information and then present to the Court expert testimony as to why reasonable royalties are a proper damages calculation. Again, this is a transparent attempt by Defendant to shield itself from liability.

### II.   DEFENDANT'S PRE-MOTION LETTER (ECF NO. 135) SHOULD BE DENIED

      Defendant's request should be rejected because Defendant does not meet the standard for a protective order with respect to any of the Topics. Federal Rule of Civil Procedure 26 requires Defendant to show "good cause" for an order to protect Defendant from "annoyance, embarrassment, oppression, or undue burden or expense[.]" Defendant must show these factors through "a **particular and specific** demonstration of fact, as distinguished from stereotyped and conclusory statements." *Yatanar v. City of NY*, 2025 WL 1635966, at *2 (E.D.N.Y. June 9, 2025).

      Here, Defendant fails to particularize any alleged "annoyance, oppression, or undue burden or expense" associated with any of the deposition Topics. Rather, Defendant claims that information relating to its advertising and marketing services and its Facebook and Instagram platforms is not relevant — a determination that is not for Defendant to make unilaterally and improper at this stage of discovery.



The Honorable Louis L. Stanton
Page 4

### A. "Marketing and Advertising" Topics 14, 24-28, and 35 Are Highly Relevant and Defendant Does Not Meet its Burden for a Protective Order.

Topics 13, 24-28 and 35 relate to Defendant's marketing and advertising for others. Defendant has not and cannot particularize any alleged "annoyance, oppression, undue burden or expense" warranting a protective order in connection with these Topics. These Topics are highly relevant and targeted to an issue at the heart of this dispute: that Plaintiff and Defendant both offer marketing and advertising services to others.

As pleaded in the Complaint, Plaintiff offers marketing and advertising services to its consumers, being both corporate and individual consumers. (*See* Compl. ¶¶ 28-29, 37-42, 44.) Further, Plaintiff holds a federal trademark registration in Class 35 for advertising and marketing goods and services. Indeed, **Defendant expressly admitted** — in a document that Defendant sought to hide as "privileged" before this Court's intervention — that Plaintiff is a "business-to-business **advertising** company." (META_MTX_00276931) (emphasis added).

Defendant offers **identical advertising and marketing services to others**. This is affirmed by the fact that Defendant owns multiple federal trademark registrations for META in Class 35 for "Marketing, advertising and promotion services" (U.S. Reg. No. 5548121) and "advertising services" (U.S. Reg. No. 7559676). It is further evidenced by documents produced by Defendant that show the suite of advertising goods and services that Defendant offers to businesses and individual consumers, including through its Creative Shop, on its Instagram and Facebook platforms, and through its advertising platform. Deposition testimony from Defendant's marketing employees indisputably confirms the same.

Defendant also tries to avoid testifying on these Topics by arguing that advertising and marketing falls outside the "Industry." However, as above, this case is not limited to the "Industry." (ECF No. 135-4 at 5, n.4.) The same is affirmed by Plaintiff's written representations, the allegations in the Complaint and the course of discovery.

### B. Defendant Has Not Met its Burden for a Protective Order to Prevent Deposition on Facebook and Instagram as Part of the "Industry."

Defendant also seeks a protective order to prevent testifying about Facebook and Instagram as part of Topics mentioning the "Industry." However, Defendant fails to particularize any annoyance, oppression, undue burden or expense caused by testimony on these Topics. Defendant's failure to meet the requisite standard dooms its motion for a protective order.

Defendant's sole basis for justifying its refusal seems to be that Defendant does not consider Facebook and Instagram to be relevant to this Action. Defendant incorrectly (for reasons stated above) contends that this dispute is limited to the "Industry" and argues that Instagram and Facebook (and any related advertising goods and services) are outside this definition of "Industry."

As an initial matter, as explained above, this Action is not limited to the "Industry." Further, Defendant's own admissions in depositions and in documents produced to Plaintiff indisputably establish that Facebook and Instagram utilize "Industry" goods and services, including AR advertising and other VR experiences and services.

9803536 v1
32098.00002

**PRYOR CASHMAN LLP**

The Honorable Louis L. Stanton
Page 5

Defendant is doing everything it can to avoid testimony concerning Facebook and Instagram — which it admits are its "profitable" — to minimize its potential liability.

### C. Defendant's Attempts to Strike Other Topics Should Be Rejected

- **Topic 46:** Defendant seeks to avoid deposition on this Topic, which concerns its responses to Plaintiff's Second Set of RFAs. Defendant's refusal to testify is puzzling because **Defendant itself noticed an identical Topic** in its 30(b)(6) deposition notice to Plaintiff, and Plaintiff prepared its witness (on over 220 RFA responses) who testified accordingly. Further, Defendant has met its burden to show why a protective order should be granted for this Topic.

- **Topics 47-49:** Defendant again unilaterally claims that various reports created in evaluating a trademark acquisition are irrelevant. Those relevance determinations are improper and do not satisfy Defendant's burden of particularizing any harassment, burden or unnecessary expense required for this Court to issue a protective order.

- **Topics 45, 51, 53:** Plaintiff is not pressing and did not include these Topics in its draft letter sent to Defendant solely to preserve this Court's time and resources. It is unclear why Defendant chose to include them anyway.

### III. ADDITIONAL OUTSTANDING DISCOVERY DISPUTES

#### A. After Two Full Days of Deposition of Plaintiff's Founder, An Additional 2 Hours of his Deposition is Inappropriate

Two days ago, **three months after deposing Plaintiff's CEO for two full days**, Defendant raised for the first time that it sought to depose him for two additional hours based on three additional emails produced. As Defendant admits, this issue is premature as the parties will meet and confer to hopefully resolve this dispute.

#### B. Seven Documents Improperly Clawed Back by Defendant for Privilege

The 502(d) Order requires that documents clawed back for privilege and later challenged by must be submitted to the Court for *in camera* review. (ECF No. 55, ¶ 9.) Despite significant correspondence and meet and confers, Defendant has refused to submit seven challenged Clawback Documents to the Court, so Plaintiff now moves to compel Defendant to produce them for *in camera* review. The baselessness of Defendant's privilege assertions with respect to these seven Clawback Documents was shown during the deposition of Defendant's representative Falynn St. Dennis last week. St. Dennis testified that in META_MTX_00224752 — one of the seven Clawback Documents — **no legal advice was discussed by any individual in that document.** Despite St. Dennis' admission, that document remains heavily redacted.

Defendant recently argued that Plaintiff's ability to challenge these Clawback Documents was waived because Plaintiff challenged these documents nearly a year ago. That is not true. In multiple emails, Plaintiff reserved all rights and waived none to bring these documents before the Court at an appropriate time. That time has come. And, if these documents are privileged, Defendant should have no issue with the Court's *in camera* review. Defendant's refusal is telling.



The Honorable Louis L. Stanton
Page 6

### C. One Redacted St. Dennis Deposition Exhibit Should Be Produced

St. Dennis, who the Court ruled waived attorney client privilege when communicating with third parties (ECF No. 119), admitted in her deposition that two redacted documents did not contain legal advice. The first, St. Dennis Deposition Exhibit 21 (META_MTX_00224893), is a chat thread between non-lawyer employees of Defendant. St. Dennis testified that **no legal advice was discussed by any individual in that thread.** Despite that admission, it remains redacted. Plaintiff requests the production of this document in unredacted form. Plaintiff notes that the other document identified in Defendant's letter (META_MTX_00266887, which St Dennis also admitted is not privileged) is no longer at issue because Defendant agreed to produce it unredacted.

### D. Defendant's Deficient Responses to Plaintiff's Requests for Admission

On July 7, 2025, Plaintiff served Defendant with a letter identifying numerous deficiencies in Defendant's Responses to Plaintiff's Second Set of RFAs, including that Defendant failed to respond to more than 60 RFAs. On July 15, Defendant informed Plaintiff that it was looking into the issues and "would provide a substantive response in the next few days." Regrettably, Defendant responded at 11pm last night, so while Plaintiff wanted to bring this dispute before the Court at the August 5 conference, because of Defendant's delays, Plaintiff cannot do so.

Respectfully submitted,

Dyan Finguerra-DuCharme