**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

**Dated: September 26, 2025**

The parties' request to seal is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 177.

September 25, 2025

**VIA CM/ECF**

The Honorable Valerie Figueredo
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007-1312

   Re: *METAx LLC v. Meta Platforms, Inc.*, Case No. 1:22-cv-06125-LLS

Dear Judge Figueredo:

  Pursuant to Section 1(g) of the Court's Individual Practices in Civil Cases ("Individual Rules"), Plaintiff METAx LLC ("Plaintiff" or "MX") and Defendant Meta Platforms, Inc. ("Defendant" or "MPI") (together, the "Parties") respectfully submits this letter motion to file under seal Exhibits A, E, 6–7, and 9–10 to the Joint Letter summarizing the disputes to be addressed at the discovery hearing set for October 2, 2025 and related portions of the Joint Letter discussing these Exhibits (the "Sealed Documents").[1]

**I. LEGAL STANDARD**

  Despite any "qualified First Amendment right of access to certain judicial documents," a document "may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). Under *Lugosch*, courts employ "a three-step test for determining whether the presumption of public access is overcome," which includes: (1) "determin[ing] whether the documents are 'judicial documents' that are 'useful in the judicial process'"; (2) "if the documents are judicial documents, . . . determin[ing] the 'weight' of the presumption of public access"; and (3) balancing the "'competing considerations against [the presumption of access],' including 'privacy interests of those resisting disclosure.'" *CRC Ins. Servs., Inc. v. Suh*, 2025 WL 560749, at *1 (S.D.N.Y. Feb. 19, 2025) (quoting *Lugosch*, 435 F.3d at 119–20).

  If a document is not a "judicial document" then there is no presumed right of public access (steps two and three above are not required) and the document is "***subject to public access***

---

[1] MX moves to seal Exhibits A, 9, and 10 and takes no position on Exhibits E, 6, and 7. MPI moves to seal Exhibits E, 6, and 7 and takes no position on Exhibits A, 9, and 10.

The Honorable Valerie Figueredo
September 25, 2025
Page 2

<u>**only**</u> **'*absent a countervailing reason*****.**'"[2] *BAT LLC v. TD Bank, N.A.*, 2019 WL 13236131, at *8 (E.D.N.Y. Sept. 24, 2019), *objections overruled*, 2019 WL 13257498 (E.D.N.Y. Nov. 20, 2019); *see Kewazinga Corp. v. Google LLC*, 2024 WL 3442428, at *1 (S.D.N.Y. July 17, 2024) ("The first question is whether the document is 'a judicial document subject to the [presumed] right of public access,' meaning that the document is 'relevant to the performance of the judicial function and useful in the judicial process.' The second step, *if the presumption attaches*, is to determine the weight of the presumption by assessing 'the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'") (quoting *Lugosch*, 435 F.3d at 119) (internal citations omitted); *CRC Ins. Servs.*, 2025 WL 560749 at *1 (same); *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (same).

Importantly, as explained further below, materials submitted in connection with a discovery motion are "not judicial documents" subject to the presumption of public access. *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 163 (S.D.N.Y. 2003) (stating "[m]aterials submitted to a court for its consideration of a discovery motion . . . are not subject to the public's right of access"). Thus, when such documents are the subject of a request to seal, courts are not required to undertake steps 2 and 3 of the *Lugosch* analysis. *Id.*

But, even if the entire 3-step analysis is required for discovery documents, the weight of the presumption in favor of public access (step 2) is low. The "weight" of any presumption of public access is determined by reference to "the role of the material at issue in the exercise of . . . judicial power and the resultant value of such information to those monitoring the federal courts." *CRC Ins. Servs.*, 2025 WL 560749 at *1. "Generally, the information will fall somewhere on a *continuum* from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). Where material supporting resolution of a discovery motion is at issue, as here, courts generally find the presumption of public access is "low." *Stern*, 529 F. Supp. 2d at 422 ("[E]ven if the transcript is filed for purposes of a motion to compel, the presumption that would attach to the transcript would be low."); *Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) (finding "presumption in favor of public access is weak" in connection with a "mere[] . . . motion to compel further discovery from a party").

II.     THE PARTIES' ARGUMENTS

      **A. Plaintiff's Requests to File Under Seal:**

---

[2] All emphasis added unless otherwise noted.

The Honorable Valerie Figueredo
September 25, 2025
Page 3

       1.      **Pl. Ex. 9** (Excerpts from META00000417), **Pl. Ex. 10** (Excerpts from META00003876), and **Def Ex. A** (Excerpts from Bolognino Deposition Testimony)

     Plaintiff's Exhibits 9 and 10 reflect excerpted slides from highly sensitive, non-public investor materials concerning Plaintiff's UNREALITY platform, which were both designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to Section 2.7 of the Parties' stipulated Protective Order in this Action. (ECF No. 57 at 3.) Specifically, the slides in these Exhibits contain confidential information concerning Plaintiff's short-term and long-term strategic plans for its UNREALITY platform, including monetization strategies and itemized revenue projections. Similarly, Defendant's Exhibit A contains excerpts of deposition testimony from Plaintiff's CEO, Mr. Justin Bolognino, concerning both Plaintiff's non-public financial statements and confidential information related to Plaintiff's development and launch of its UNREALITY platform. Mr. Bolognino's excerpted testimony has also been designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Protective Order.

     "[C]ourts in this District routinely permit parties to seal or redact commercially sensitive information in order to protect confidential business and financial information." *In re B & C KB Holding GmbH*, No. 22-MC-180 (LAK) (VF), 2023 WL 2021299, at *1 (S.D.N.Y. Feb. 14, 2023) (Figueredo, M.J.) (citing *Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-CV-6559 (PGG) (KHP), 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 22, 2021); *Gracyzk v. Verizon Commc'ns, Inc.*, No. 18-CV-6465 (PGG), 2020 WL 1435031, at *8–9 (S.D.N.Y. Mar. 24, 2020)). Disclosure of Plaintiff's Exhibits 9 and 10 and Defendant's Exhibit A would cause significant harm to Plaintiff's business, as such disclosure would provide highly sensitive strategic and financial information to Plaintiff's competitors, which would be particularly acute because the current market involving social media services is highly competitive.

     For the reasons stated above, Plaintiff respectfully requests that Plaintiff's Exhibits 9 and 10 and Defendant's Exhibit A be filed under seal.

    **B.**    **Defendants Requests to File Under Seal.**

       1.      **Pl. Ex. 6** (Excerpts from St. Dennis Deposition Transcript); **Def Ex. E** (Excerpts from St. Dennis Deposition Transcript); and **Pl. Ex. 7** (META_MTX_00276931) and Related Portions of the Joint Letter.

     The narrowly redacted portions of Exhibits 6 and E (deposition excerpts), 7 (confidential email between MPI and its third-party partners), and related portions of the Joint Letter discuss highly confidential information and are textbook examples of documents warranting sealing.

     As an initial matter, there is no presumption of public access to Exhibits 6, 7, and E

The Honorable Valerie Figueredo
September 25, 2025
Page 4

because they are not judicial documents as they relate to discrete discovery issues. *Diversified*, 217 F.R.D. at 163 ("[S]upporting documents relating to a discrete discovery issue" are "*not judicial documents*."). Therefore, sealing is proper.

Regardless, assuming Exhibits 6, 7, and E are judicial documents, sealing is still proper as any presumption of public access is low and easily outweighed by MPI's interest. Indeed, *BAT* involved an identical situation where a party was seeking to seal a deposition transcript relied on to support its motion for a protective order. The court ordered the transcript sealed, noting that "the public's interest in access to discovery documents is less than the presumption afforded documents submitted in connection with a dispositive motion." 2019 WL 13236131 at *7, *8; *see also Stern*, 529 F. Supp. 2d at 422 (sealing deposition transcript and stating "the presumption of public access—if any—that attaches to the transcript [] is low, at best" since the court "would not be making any decision on the merits, but [] simply [] reviewing excerpts of the transcripts to resolve a discovery dispute"). So, too, here. The presumption of public access to Exhibits 6, 7, and E is (at best) low because they are a deposition transcript and confidential email submitted to aid the Court in its resolution of discovery disputes (not any dispositive motion).

Either way, MPI's countervailing interests far outweigh the "low," *Stern*, 529 F. Supp. 2d at 422, or "weak," *Diversified*, 217 F.R.D. at 159, presumption of public access here. **First**, the limited portions of Exhibits 6 and E that MPI seeks to seal provides information regarding MPI's highly confidential discussions and strategy relating to its business operations and organizational structure, including information regarding the company's internal processes for handling the conception and introduction of new brands or trademarks, the way the company thinks about brand strategy in connection with its company goals and vision, event planning, brand awareness, company training procedures, and third-party relationships, all of which is confidential, non-public and commercially sensitive information. **Second**, the limited portions of Exhibit 7 (and any related quotations in the joint letter) that MPI seeks to seal contain MPI's confidential, non-public and commercially sensitive information regarding MPI's highly confidential discussions with its business partners concerning, *inter alia*, strategy and business operations, including specifically how MPI responds to threats, how it coordinates and conducts event planning with its business partners, and how it markets and protects its own (and others') brand. The information sought to be sealed could provide valuable insight to MPI's competitors regarding MPI's internal processes, marketing, branding, and IP strategy, and strategic goals and vision for the future that could be used by those competitors to unfairly compete with MPI. Given the risks of competitive harm to MPI, MPI expends significant resources keeping this type of highly sensitive information confidential. MPI has narrowly redacted Exhibits 6, 7, E, and the joint letter to only these highly confidential portions and granted the public access to the remainder.

"[C]ourts have consistently found that confidential commercial information of a

The Honorable Valerie Figueredo
September 25, 2025
Page 5

business—including confidential research, internal business documents and information about a business's operations[—]are the proper subject of sealing." *Rodo Inc. v. Guimaraes*, 2022 WL 17742392, at *1 (S.D.N.Y. Dec. 5, 2022); *see also News Corp. v. CB Neptune Holdings, LLC*, 2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021) (recognizing courts "routinely seal documents to prevent the disclosure of confidential business information," including specifically "qualitative market research" and "non-public . . . research or technical information"); *PharmacyChecker.com LLC v. Nat'l Ass'n of Bds. of Pharm.*, 2022 WL 4956050, at *2 (S.D.N.Y. Aug. 26, 2022) ("[C]ourts have consistently found that confidential commercial information of a business—including confidential research, internal business documents and information about a business's operations are the proper subject of sealing."); *CRC Ins. Servs.*, 2025 WL 560749 at *2 (granting motion to seal where the sealing request was "narrowly tailored to prevent unauthorized dissemination of confidential business information, and the protection of that information outweighs the public's right to access"); Dkt. 109 at 2 (collecting cases confirming that courts in this Circuit routinely find that confidential business information, like here, is the proper subject of sealing). Indeed, courts consistently seal documents containing confidential information like Exhibits 6, 7, and E. *See, e.g.*, *BAT*, 2019 WL 13236131 at *8 (sealing deposition transcripts relied on in support of motion for protective order discussing confidential "operations" and "protocols"); *Kewazinga*, 2024 WL 3442428 at *2 (holding "[n]onpublic business and legal information may be redacted" in a deposition transcript); *Robinson v. De Niro*, 2022 WL 274677, at *4 (S.D.N.Y. Jan. 26, 2022) (sealing highly sensitive deposition testimony); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (sealing "enforcement policies and investigation information" in a judicial document). Accordingly, the substantial interests of MPI in maintaining as confidential its competitively sensitive business information outweigh the (at best) low presumption in favor of public access.

Finally, aside from the countervailing interests detailed above that justify sealing, MPI designated Exhibits 6, 7, and E as confidential under the Parties' protective order. *See* Dkt. 57. This confirms that MPI's expectation is that the designated portions of Exhibits 6, 7, and E will remain confidential. *Id.* Thus, the Parties' protective order reinforces the conclusion that the sealing of Exhibits 6, 7, and E is proper. *See, e.g.*, *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 2019 WL 3753780, at *5 (E.D.N.Y. Aug. 8, 2019) (considering the party's designation of a contract as "Highly Confidential" in determining whether to seal said contract); *see also Robinson*, 2022 WL 274677 at *4 ("It is also well established that the public has no right to access information obtained through discovery and that is subject to a protective order . . . .").

In conclusion, Exhibits 6, 7, and E and related portions of the Joint Letter discussing these Exhibits are properly sealed under *Lugosch*, as specific factual findings support sealing and both requests are narrowly tailored.

* * * *

The Honorable Valerie Figueredo
September 25, 2025
Page 6

The Parties respectfully request that the Sealed Documents be filed under seal.

Respectfully submitted,

**PRYOR CASHMAN LLP**             **KIRKLAND & ELLIS LLP**

By: */s/ Dyan Finguerra-DuCharme*     By */s/ Dale M. Cendali*
Dyan Finguerra-DuCharme            Dale M. Cendali

The Honorable Valerie Figueredo
September 25, 2025
Page 7

## CERTIFICATE OF SERVICE

Pursuant to Standing Order M10-168, I hereby certify that on September 25, 2025, I caused a true and correct copy of the sealed materials related to the foregoing filing and the corresponding papers and exhibits thereto, to be served via electronic mail on all counsel of record.

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Dale M. Cendali*
Dale M. Cendali